IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TAMERA FOSTER, | : | CIVIL ACTION |
| Plaintiff | : | |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI, | : | |
| Acting Commissioner of the Social | : | |
| Security Administration, | : | |
| Defendant | : | NO.  22-3743 |

**MEMORANDUM**

CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE                                September 11, 2023

Tamera Foster ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the

final decision of the Commissioner of the Social Security Administration ("the Commissioner"),

denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security

Act.  Plaintiff has filed a brief in support of her request for review, the Commissioner has

responded to it, and Plaintiff has filed a reply.  For the reasons set forth below, Plaintiff's request

for review is granted and the case is remanded to the Commissioner.

**I.     PROCEDURAL HISTORY**[1]

On September 23, 2019, Plaintiff applied for DIB, alleging that her disability commenced

on June 10, 2019; her alleged onset date was later amended to December 3, 2018.  R. 18.  The

claim was denied, initially and upon reconsideration; therefore, Plaintiff requested a hearing.  *Id.*

On April 14, 2021, during COVID-19 precautions, Plaintiff appeared for a telephonic hearing,

before Trina Moore, Administrative Law Judge ("the ALJ"); Plaintiff, represented by an attorney,

Dr. John Hansen, a medical expert ("the ME"), and Kenneth Smith, a vocational expert ("the VE"),

---

[1] The court has reviewed and considered the following documents in analyzing this case:  Plaintiff's Memorandum of Law ("Pl. Br."), Defendant's Response to Request for Review of Plaintiff ("Resp."), Plaintiff's Reply Brief ("Reply"), and the administrative record.  ("R.").

testified at the hearing.  *Id.*  On July 26, 2021, the ALJ, using the sequential evaluation process ("SEP") for disability,[2] issued an unfavorable decision.  R. 18-35.  The Social Security Administration's Appeals Council denied Plaintiff's request for review, on August 22, 2022, making the ALJ's findings the final determination of the Commissioner.  R. 1-3.  Plaintiff presently seeks judicial review and the parties have consented to this court's jurisdiction, pursuant to 28 U.S.C. § 636(c)(1).

## II.   FACTUAL BACKGROUND

A.   Personal History

Plaintiff, born on June 23, 1963, R. 42, was 58 years old on the date of the ALJ's decision. She completed twelve years of schooling.  R. 58.  Prior to ending full-time employment, Plaintiff worked for 17 years as a vocational case manager.[3]  R. 62.  She resides with her husband.  R. 76.

---

[2] The Social Security Regulations provide the following five-step sequential evaluation for determining whether an adult claimant is disabled:

> 1.  If the claimant is working, doing substantial gainful activity, a finding of not disabled is directed.  Otherwise proceed to Step 2.  *See* 20 C.F.R. § 404.1520(b).
>
> 2.  If the claimant is found not to have a severe impairment which significantly limits his physical or mental ability to do basic work activity, a finding of not disabled is directed.  Otherwise proceed to Step 3.  *See* 20 C.F.R. § 404.1520(c).
>
> 3.  If the claimant's impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 of Subpart P of Part 404 of 20 C.F.R., a finding of disabled is directed.  Otherwise proceed to Step 4.  *See* 20 C.F.R. § 404.1520(d).
>
> 4. If the claimant retains the residual functional capacity to perform past relevant work, a finding of not disabled is directed.  Otherwise proceed to Step 5.  *See* 20 C.F.R. § 404.1520(f).
>
> 5.  The Commissioner will determine whether, given the claimant's residual functional capacity, age, education, and past work experience in conjunction with criteria listed in Appendix 2, she is or is not disabled.  *See* 20 C.F.R. § 404.1520(g).

[3] At the time of the administrative hearing, Plaintiff was working part-time as a school crossing guard; she worked one or two days per week for 40 minutes each shift.  R. 59-60.

B.      Plaintiff's Testimony

Plaintiff testified about her limitations at the April 14, 2021 administrative hearing.  R. 58-78.  She suffers neck, shoulder, and back pain.  R. 67, 71.  Plaintiff takes prescribed medication and has received trigger point injections for her neck pain; those injections provide relief for, at most, two weeks.  R. 68-69.  Pain medication makes Plaintiff feel drowsy during the day.  R. 69.  Despite neck treatment, Plaintiff has difficulty moving her neck to the left and lifting her head up.  R. 69-70.  Shoulder pain prevents Plaintiff from lifting her left arm above her head.  R. 70.

Plaintiff experiences back pain from her shoulder blades down her spine and hip pain.  R. 71.  She takes prescribed pain medication for her back, but has not had substantive discussions about back surgery, because she is fearful.  R. 71-72.  Because of her neck, back and shoulder pain, Plaintiff has difficulty standing in the shower and washing and drying her hair and, as a result, she no longer performs these grooming tasks on a daily basis.  R. 76-77.

Plaintiff also suffers from fibromyalgia which was diagnosed in the early 2000s.  R. 72.  In addition to causing pain, fibromyalgia causes achiness in her body, and a feeling of heaviness; she described the symptoms as flu-like.  R. 72-73.  Plaintiff experiences days where fibromyalgia pain is so debilitating that she does not leave bed.  R. 73.  Plaintiff estimated that, in the last six months, she had experienced fifteen to twenty fibromyalgia flare-ups that resulted in debilitating pain.  R. 74.

Also, Plaintiff suffers from anxiety and depression; she started treating with a therapist in December 2020.  R. 74-75.  Her therapist is helping Plaintiff reduce stressors in her life; additionally, she has taken medication, prescribed by her treating physician, for approximately ten years.  R. 75.  Despite treatment, Plaintiff has noticed that her mental health has deteriorated since December 2018.  R. 75-76.  She experiences more stress, has become emotional and withdrawn;

additionally, she has developed short-term memory and concentration problems.  R. 76.  As a result, Plaintiff's husband makes sure she attends doctor's appointments and takes her prescribed medication.  R. 76.

Plaintiff's husband performs most household chores, including grocery shopping.  R. 76. Although she can load the clothes' washer, Plaintiff is unable to remove damp clothing from the washer, fold clothes or carry laundry baskets.  R. 76.

B.      Medical Expert Testimony

The ME testified that, based on his review of Plaintiff's medical records, cervical and lumbar degenerative disc disease causes her diffuse spinal pain.  R. 45.  The ME noted that Plaintiff's records confirmed that doctors treated her with opiates, trigger point injections and nerve calming medication.  R. 46.  He further explained that, comparing a 2013 MRI with a 2019 MRI showed that Plaintiff's degenerative disc disease had progressed.  R. 47-48.  However, the ME opined that Plaintiff did not meet a listing.  R. 49.

Next, the ME opined that Plaintiff's exertional capacity fell between the sedentary[4] and light[5] levels.  R. 50.  The doctor stated that she should not lift more that ten pounds occasionally and occasionally carry only five pounds.  *Id.*  He further opined that Plaintiff should not be on her feet for more than four or five hours and sit for only four to five hours in a workday; in addition, she needed to alternate from sitting to standing every 30 to 45 minutes.  R. 51.  The ME also opined that, at best, Plaintiff would be off-task five to ten percent of the time.  R. 52.  On some days, she would be off-task even more and she might miss work two or more days per month, secondary to

---

[4] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking or standing is often necessary in carrying out job duties."  20 C.F.R. § 404.1567(a).

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. § 404.1567(b).

her pain.  R. 54.

C.     Vocational Testimony

The VE testified that Plaintiff's past job as a supervisor in a contract sheltered workshop, was a skilled[6] position, generally performed at the light level, although Plaintiff occasionally performed it at the medium[7] level.  R. 78.  The ALJ asked the VE to consider a person of Plaintiff's age, education, work experience, who could perform light work, and:  occasionally climb ramps and stairs; occasionally balance, stoop, kneel and crouch; never climb ladders, ropes, scaffolds, or crawl; occasionally reach overhead bilaterally; frequently reach in all other directions bilaterally; occasionally operate bilateral foot controls; and should avoid extreme cold, unprotected heights, moving mechanical parts and pulmonary irritants.  R. 82-83.  The VE responded that this individual could perform Plaintiff's past work, as it is generally performed.  R. 83.  The VE also identified three, additional, light, unskilled[8] jobs the person could perform:  (1) office helper, 13,000 positions in the national economy; (2) marker, 120,000 positions in the national economy; and (3) small products assembler, 20,000 positions in the national economy.  R. 83.

Next, the VE was asked to consider the same person described in the first hypothetic, but who could frequently reach bilaterally overhead and in all directions.  R. 83.  The VE confirmed that this person could still perform Plaintiff's past work, as generally performed.  *Id.*  The ALJ next asked the VE to consider the first hypothetical individual but limited to sedentary work.  R. 83-84.  The VE responded that this person could not perform Plaintiff's past work.  R. 84.  The

[6] "Skilled work requires qualifications in which a person uses judgment to determine the machine and manual operations to be performed in order to obtain the proper form, quality, or quantity of material to be produced. . . . Other skilled jobs may require dealing with people, fact, or figures or abstract ideas at a high level of complexity."  20 C.F.R. § 404.1568(c).
[7] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. § 404.1567(c).
[8] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time.  The job may or may not require considerable strength . . . [a] person does not gain work skills by doing unskilled jobs."  20 C.F.R. § 404.1568(a).

VE further opined that employers will tolerate an employee being off-task only up to 10% of the time and permit only one unexcused absence per month.  *Id.*  Finally, Plaintiff's counsel asked the VE to consider the person described in the first hypothetic if they were only able to understand, remember, and carry out simple instructions and simple, routine tasks.  R. 85.  The VE responded that such an individual could not perform Plaintiff's past work.  *Id.*

### III.   THE ALJ's FINDINGS

In her decision, the ALJ issued the following findings:

1.   [Plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2024.

2.   [Plaintiff] not engaged in substantial gainful activity since December 3, 2018, the amended alleged onset date (20 CFR 404.1571 *et seq.*).

3.   [Plaintiff] has the following severe impairments: degenerative disc disease-lumbar and cervical, asthma, fibromyalgia, and chronic pain syndrome (20 CFR 404.1520(c)).

4.   [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5.   After careful consideration of the entire record, the undersigned finds that [Plaintiff] has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except: Occasionally climbing ramps and stairs, balancing, stooping, kneeling, and crouching.   Never climbing ladders, ropes, or scaffolds and crawling. Frequently overhead reaching bilaterally.   Frequently reaching in all other directions.  Occasional operation of foot controls bilaterally.  Avoiding extreme cold, hazards such as unprotected heights and moving mechanical parts, pulmonary irritants.

6.   [Plaintiff] is capable of performing past relevant work as a Supervisor, Contract-Sheltered Workshop.  This work does not require the performance of work-related activities

precluded by the [Plaintiff's] residual functional capacity (20 CFR 404.1565).

7.      [Plaintiff] has not been under a disability, as defined in the Social Security Act, from December 3, 2018, through the date of this decision (20 CFR 404.1520(f)).

R. 21, 24, 26, 33-34.

## IV.   DISCUSSION

A.      Standard of Review

Judicial review of the Commissioner's final decision is as follows.  The Commissioner's findings of fact will not be disturbed if they are supported by substantial evidence.  *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999).  Substantial evidence is not "a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation omitted).  While it is more than a mere scintilla of evidence, *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), it may amount to less than an evidentiary preponderance.  *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).  Overall, this test is deferential to the ALJ and the court should affirm the ALJ's findings of fact that are supported by substantial evidence, even when the court, acting *de novo,* might have reached a different conclusion. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987).  Indeed, the court is not permitted to weigh the record evidence itself. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005).  By contrast, the Commissioner's legal conclusions are subject to *de novo* review.  *Poulos*, 474 F.3d at 91; *Schaudeck*, 181 F.3d at 431.

B.      Burden of Proof in Disability Proceedings

To be found "disabled" under the Act, Plaintiff must carry the initial burden of demonstrating that she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).  Plaintiff may establish a disability through: (1) medical evidence meeting one or more of the serious impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1; or (2) proof that the impairment is severe enough that Plaintiff cannot engage in any type of "substantial gainful work which exists in the national economy."  *Heckler v. Campbell*, 461 U.S. 458, 460 (1983); 42 U.S.C. § 423(d)(2)(A).

Under the first method, Plaintiff is considered *per se* disabled by meeting one of the "listed" impairments.  *Heckler*, 461 U.S. at 460.  Under the second method, Plaintiff must initially demonstrate that a medically determinable impairment prevents her from returning to her past employment.  *See Brown*, 845 F.2d at 1214.  If Plaintiff proves that her impairment results in functional limitations to performing her past relevant work, then the burden of proof shifts to the Commissioner to prove that work does in fact exist in the national economy which Plaintiff can perform given her age, education, work experience and residual functional capacity.  *See Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019); *Poulos,* 474 F.3d at 92.

C.      Review of the Administrative Law Judge's Decision

Applying the sequential evaluation process, the ALJ determined that Plaintiff could perform her past relevant work, as generally performed, as well as other jobs that exist in the national economy, and, hence, was not disabled. R. 18-35.  Plaintiff disputes the ALJ's decision and argues that the ALJ reversibly erred by improperly assessing :  (1) the medical opinions in the

8

record; (2) her residual functional capacity ("RFC"); and (3) her subjective statements.  Pl. Br. at

9-26.  Plaintiff also asks that, based on the merits of her prior arguments, this court should award

her DIB.  *Id.* at 26-27.  The Commissioner denies Plaintiff's assertions.  Resp. at 1-18.  This court

finds that Plaintiff's second argument has merit.  The remedy for that error is a remand, not an

award of benefits.

1. <u>The ALJ Properly Considered the Medical Opinions in the Record when Assessing Plaintiff's RFC</u>

Plaintiff argues that the ALJ failed to consider properly the medical opinions in the record,

especially those of the ME; consequently, she found that Plaintiff could perform medium work,

which no medical source opined.  Pl. Br. at 12.  Plaintiff's argument fails for three reasons:  (1)

under the applicable regulations, the ALJ was not required to provide any analysis regarding

opinions concerning Plaintiff's RFC; (2) under applicable prior regulations, the ALJ was not

required to have a medical source substantiate any aspect of her RFC assessment that Plaintiff

could perform medium work; and (3) even if the ALJ erroneously found that Plaintiff could

perform a restricted range of medium work, such error was harmless, because Plaintiff's past

relevant work was light, an exertional level that Plaintiff admits was supported by some medical

opinions in the record.

Under the regulations applicable to this case, any evaluation in the record of a claimant's

RFC is not considered inherently valuable or persuasive, because RFC is an issue reserved for the

Commissioner.  20 C.F.R. § 404.1520b(c)(3)(v) (2017).  Inasmuch as such opinions are neither

inherently valuable nor persuasive, an ALJ is not required to provide any analysis of such opinions.

§ 404.1520b(c).  Hence, the ALJ had no duty to even consider the ME's opinion about Plaintiff's

RFC.

Under prior regulations, where medical evidence was considered differently,[9] the ALJ was free to assess Plaintiff's RFC, without having a medical source to support any particular component of the  RFC assessment.  *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 362 (3d Cir. 2011).   Hence, under prior law, the ALJ was free to assess independently how much weight Plaintiff could lift or carry, regardless of what any doctors opined about that.

Finally, even if the ALJ erred in finding that Plaintiff could perform a restricted range of medium work, that error was harmless.  It is clear that Plaintiff's past relevant job was a light position, as generally performed.  R. 78.  Indeed, the first hypothetical question posited asked the VE to consider a person who could only perform a limited range of light work.  R. 82-83.  The VE opined that this person could perform Plaintiff's past job, as generally performed, *i.e.,* at the light level.  R. 83.  As Plaintiff herself admits, *see* Pl. Br. at 16, several doctor's opinions in the record supported a finding that she could perform light work.  Hence, Plaintiff's first argument provides no basis to remand.

2.  The ALJ Erroneously Failed to Include any Mental Health Limitations in Plaintiff's RFC Assessment

Plaintiff next argues that the ALJ erred, because in assessing her RFC, the ALJ only considered her multiple sclerosis ("MS") and discounted all her other impairments, including her mental health limitations.  Pl. Br. at 20.  This argument has merit.

Plaintiff's argument is somewhat confusing, because she does not have an MS diagnosis and the ALJ did not find that to be a severe impairment.  Instead, the ALJ found Plaintiff's severe impairments to be degenerative disc disease (lumbar and cervical), asthma, fibromyalgia, and chronic pain syndrome.  R. 21.  She found Plaintiff's mental health impairments non-severe and

---

[9] However, even under the prior regulations a doctor's assessment of a claimant's RFC was not considered to be a medical opinion.  *See* 20 C.F.R. § 404.1527(d)(2) (2016).

explained why.  R. 22-24.  Furthermore, the ALJ stated that she would consider Plaintiff's non-severe mental health limitations when formulating Plaintiff's RFC.  R. 24.

The ALJ's RFC assessment is the following:

> [Plaintiff] has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except: Occasionally climbing ramps and stairs, balancing, stooping, kneeling, and crouching.  Never climbing ladders, ropes, or scaffolds and crawling.  Frequently overhead reaching bilaterally.  Frequently reaching in all other directions.  Occasional operation of foot controls bilaterally.  Avoiding extreme cold, hazards such as unprotected heights and moving mechanical parts, pulmonary irritants.

R. 26.  It is apparent that this assessment contains no mention of or allowance for any mental health limitations; all limitations accommodated are physical, postural, or environmental.

The Commissioner argues that the ALJ's omission was not erroneous because she adequately explained the functional significance of Plaintiff's mental health limitations.  Resp. at 7-9.  However, the Commissioner's argument relies upon the ALJ's discussion at R. 23.  That is the section of the decision where the ALJ explains why she found Plaintiff's mental health impairments non-severe.  This argument ignores the fact that, although the ALJ explicitly stated at R. 24 that she would include mental health limitations in the RFC assessment, she failed to do so.

The Commissioner argues that any error in this regard is harmless, because all of the alternative jobs the VE identified were unskilled.  Resp. at 9 (citing R. 34).  While it is true that the VE identified alternative, unskilled jobs in response to the ALJ's first hypothetical question, R. 83, it is unclear why the VE did so.  The ALJ never requested that he do so.  Furthermore, since the ALJ never asked the VE to consider any mental health limitations in the hypothetical question she posed that yielded the alternative jobs, it is not possible to hold that the VE's response accounts

11

for any.  That is, the VE's response is circumscribed by the limitations expressly articulated in the hypothetical question.  *See Rutherford*, 399 F.3d at 553-54 (citations omitted).

The court's decision to remand may appear overly technical, however, this case must be remanded so that the ALJ can explicitly decide what limitations to Plaintiff's RFC result from her albeit non-severe mental impairments.  If the ALJ believes there are none, she must say so explicitly.  If she finds some mental limitations, she must include them in a hypothetical question to the VE, so that his testimony can support the assigned RFC.  *See Rutherford*, 399 F.3d at 553-54.

### 3.   The ALJ Properly Evaluated Plaintiff's Subjective Statements

Plaintiff argues that the ALJ failed to evaluate her subjective symptoms in accordance with Social Security Ruling ("SSR") 16-3p.  Pl. Br. at 23.  This claim lacks merit.

SSR 16-3p requires an ALJ to evaluate the evidence in the record to first determine if the claimant has medically determinable impairments.  2017 WL 5180304, *3-*4.  Next, if medically determinable impairments exist, the ALJ must evaluate all the evidence in the record to determine the degree to which the claimant's symptoms limit her.  *Id.* at *4-*5.

The ALJ acknowledged the requirements of SSR 16-3p, R. 26, and applied them in her decision.  R. 26-30.  That means she complied with SSR 16-3p.  Plaintiff's dispute is not truly that the ALJ failed to apply SSR 16-3p; instead, she disputes the conclusions the ALJ drew about the voluminous evidence in the record.  Pl. Br. at 23-26.  In doing so, Plaintiff asks this court to disagree with the ALJ's findings of fact.  This court is not empowered to do so.  *See Rutherford*, 399 F.3d at 552.  Hence, Plaintiff's argument fails.

### 4.   This Case Should be Remanded

Plaintiff argues that this court should award benefits.  Pl. Br. at 26-27.  However, as noted

*supra* Section IV(C)(2), upon remand, the ALJ is not precluded from finding that Plaintiff's non-severe mental impairments cause no functional limitations.  If the ALJ so finds, she may be able to render a properly-supported decision which results in finding that Plaintiff is not disabled.  Hence, the record does not demonstrate that Plaintiff is disabled, which is required before an award of benefits would be permissible.  *Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 358 (3d Cir. 2008).  Furthermore, unlike *Brownawell* and the other, few cases wherein the Third Circuit has granted disability benefits, Plaintiff has not endured multiple district court remands, nor excessive delay in the consideration of her disability claim, which was filed only four years ago.  *See id.* (noting that Brownawell had taken two district court appeals and her claim was pending for eight years); *see Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000) (noting that Morales had endured two district court appeals and her claim was pending for ten years).  Accordingly, a remand is the proper result in this case.

       An implementing order and order of judgment follow.